IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SNELLING AND SNELLING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | |
| | § | 3:03-CV-2948-K |
| FEDERAL INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION and ORDER

Before the Court is Plaintiff Snelling and Snelling, Inc.'s ("Snelling") Motion for Partial Summary Judgment, and Defendant Federal Insurance Company's ("Federal") Motion for Summary Judgment. The Court holds that Federal has already paid the maximum recovery to which Snelling is entitled under the terms of the insurance policy. Therefore, Federal's Motion for Summary Judgment is **GRANTED**, and Snelling's motion is **DENIED**.

I.   Background

Plaintiff Snelling provides personnel services to businesses throughout the United States. In connection with these services, Snelling operates from offices located around the country, including an office at 150 Broadway near the site of the World Trade Center. Snelling procured property insurance for several of these office locations from Defendant Federal, an underwriter and insurance provider. The insurance policy ("the

Policy") at issue in this case was effective from December 1, 2000, to December 1, 2001. The Policy provided property insurance, including coverage for lost business income and extra expenses, for Snelling's office located at 150 Broadway. After the terrorist attack of September 11, 2001, Snelling sought to recover from Federal, under the Policy, for damages sustained at the 150 Broadway location.

## II.   Legal Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Gonzalez v. Denning*, 394 F.3d 388, 391 (5th Cir. 2004). Contract interpretation is purely a legal issue. *Gonzalez*, 394 F.3d at 392. Summary judgment is, therefore, appropriate unless a choice of reasonable interpretations creates an ambiguity in the contract. *See Amoco Prod. Co v. Texas Meridian Res. Exploration Co., Inc.*, 180 F.3d 664, 669 (5th Cir. 1999).

In cases brought under diversity jurisdiction, this Court interprets contracts according to the applicable state law. *See Gonzalez*, 394 F.3d at 392. Under Texas law, insurance policies are interpreted according to the rules of construction applicable to contracts generally. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Interpretation of an unambiguous contract is a question of law to be determined by looking at the contract as a whole. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). If the terms of a written contract can be given a definite legal meaning,

then it is not ambiguous, and summary judgment is appropriate. *See Gonzales*, 394 F.3d at 391-92.

## III. Analysis of Snelling's Claims

### A. Lost Business Income

In addition to providing insurance for Snelling's buildings and personal property, the Policy issued by Federal also covers lost business income. Specifically, the Policy provides that Federal will pay for Snelling's actual business income losses that result from direct physical damage to a dependent business premises. The primary dispute in this case centers around the precise limit of coverage for Snelling's dependent business premises. Federal argues that the Policy grants a total of $250,000 in lost business income coverage for Snelling's 150 Broadway location. Snelling, on the other hand, contends that the Policy provides up to $250,000 in coverage for each of Snelling's dependent business premises related to the 150 Broadway location. This would include $250,000 of coverage for each additional business premises, operated by others, that accept Snelling's personnel services. Because the Policy clearly limits the coverage for business income loss to $250,000 at Snelling's 150 Broadway location, the Court finds that summary judgment is appropriate for Federal.

Under Texas law, a court must read all the parts of a contract together, in relation to one another, in order to ascertain the true intent of the parties. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133-34 (Tex. 1994). Therefore, this Court must set forth and

analyze all of the relevant Policy language in order to determine whether the Business Income provision can be given a definite legal meaning. The appropriate way to begin this inquiry is by looking at the Policy's definitions of the relevant terms.

At the outset, the Business Income provision of the Policy states, "Throughout this contract the words 'you' and 'your' refer to the Named Insured [Snelling] shown in the Declarations of this policy. The words 'we,' 'us' and 'our' refer to the company providing this insurance [Federal]." The policy also defines "Dependent Business Premises," in relevant part, to mean "premises operated by others on whom you depend to...accept your products or services...." With these definitions in hand, the Court now turns to address the substantive Policy provisions.

The Policy provision that grants coverage for lost business income provides as follows:

> We [Federal] will pay for the actual business income loss and extra expense you [Snelling] incur due to the actual or potential impairment of your [Snelling's] operations during the period of restoration, not to exceed the Limit of Insurance for Dependent Business Premises shown under Business Income in the Declarations.
>
> This actual or potential impairment of operations must be caused by or result from direct physical loss or damage by a covered peril to property or personal property of a dependent business premises at a dependent business premises.

The Policy provision that limits coverage for lost business income is set forth in the Supplementary Declarations. The Supplementary Declarations list separate "Limits Of Insurance" for specific types of business income losses, including "Dependent

Business Premises." Specifically, the Supplementary Declarations limit lost business income coverage for dependent business premises to $250,000. The Supplementary Declarations further provide:

> The Limits Of Insurance shown below are provided for the Coverages shown at no additional cost to you [Snelling]. **These Limits Of Insurance apply separately at each of your [Snelling's] premises unless otherwise shown**. You [Snelling] may purchase additional Limits Of Insurance, and we [Federal] will charge you [Snelling] an additional premium. If you [Snelling] purchase additional limits for any of these Coverages, the Limits Of Insurance shown in the Declarations will reflect your [Snelling's] total limit, including the Limits Of Insurance shown below. (emphasis added).

After careful review, the Court concludes that the individual Policy provisions, when read together as a whole, clearly indicate that the maximum limit of lost income coverage for dependent business premises is $250,000 per Snelling location. The policy does not provide up to $250,00 of coverage per dependent premises location, as Snelling claims. Snelling's argument focuses, almost exclusively, on the words "your premises" as used in the Supplementary Declarations – "These Limits Of Insurance apply separately at each of **your premises** unless otherwise shown." (emphasis added). According to Snelling, the phrase "your premises" refers to any type of premises mentioned in the Policy, including dependent business premises. Under this argument, the $250,000 limit applies separately at each of Snelling's dependent business premises. Such a construction, however, runs contrary to the plain language of the contract.

The Policy clearly states that the terms "you" and "your," as those words are used throughout the contract, refer to the named insured, that being Snelling. Thus, the

limits of insurance, by the Policy's very terms, apply separately at each of Snelling's premises. The Policy's loss of income coverage for dependent business premises is, therefore, limited to $250,000 for Snelling's 150 Broadway location. The mere fact that Snelling proffers a conflicting interpretations does not render the contract ambiguous. *See DeWitt County Elec. Coop., Inc., v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).

This Court's reading of the Policy finds further support in the Business Income provision under the heading "Limits Of Insurance," which states: "The most we [Federal] will pay in any one occurrence, is the amount of loss, not to exceed the applicable Limit of Insurance shown in the Declarations." Thus, the most Federal will pay, with respect to dependent business premises, for losses resulting from the September 11, 2001, terrorist attack, is $250,000 for Snelling's 150 Broadway location. As it is undisputed that Federal has already paid Snelling this amount in dependent business premises liability, the Court finds that Federal is entitled to summary judgment regarding Snelling's business income claim.

**B.     Extra Expenses**

Snelling has also made claims for extra expenses, under the Policy, for Worker's Compensation costs and for legal fees associated with the eviction of a tenant from the 150 Broadway location. The Court finds that both of these claims are beyond the clear and definite scope of the Policy, and that Federal is entitled to summary judgment on these issues as well.

With respect to coverage for extra expenses, the Policy provides that "We [Federal] will pay for the actual...extra expenses you [Snelling] incur," so long as such expenses "result from direct physical loss or damages by a covered peril to property at the premises shown in the Declarations...." While it may be true that Snelling would not have incurred the Worker's Compensation expenses but for the terrorist attack of September 11, those expenses did not result from direct physical loss or damages <u>to property</u>. Rather, these costs resulted from physical harm suffered by individuals, namely Snelling employees. Thus, the claim for Worker's Compensation costs is beyond the scope of the Policy coverage.

Likewise, Snelling's claim for legal fees associated with the eviction of subtenants, to whom it had leased space at its 150 Broadway location after September 11, 2001, is beyond the scope of the Policy. Snelling claims that it made the decision to partially rent its space at 150 Broadway in an effort to reduce its losses after the terrorist attack of September 11. According to Snelling, the subsequent eviction costs associated with removing the subtenants were over and above the expenses that they would normally have incurred, and thus, are covered by the Policy. However, this type of loss falls outside the Policy's definition of extra expenses.

Under the Policy, an "extra expense" is defined as an expense incurred "in an attempt to continue operations, over and above the expenses you [Snelling] would have normally incurred...." The Policy further defines "operations" as any "business activities

occurring at your [Snelling's] premises prior to the loss, including the tenantability of these premises." Applying these definitions, the Court concludes that Snelling's attorney's fees were not incurred in an attempt to continue a business activity occurring prior to the loss. Rather, Snelling's attorney's fees were incurred in an attempt to terminate an activity that began subsequent to the loss, that activity being the subletting of the property located at 150 Broadway. The Court finds Snelling's claim for attorney's fees to be too remote to qualify as an attempted continuation of operations at the 150 Broadway location. Thus, Snelling's claim for attorney's fees also falls outside the scope of the Policy. Consequently, Federal is entitled to summary judgment with respect to Snelling's claims for extra expenses.

### IV.   Conclusion

The Court finds that the Policy issued by Federal is not ambiguous as a matter of law. The definite legal meaning of the of the Policy is that the maximum limit of lost income coverage for dependent business premises is $250,000 for Snelling's office located at 150 Broadway, which Federal has already paid. Furthermore, Snelling's claims for extra expenses are beyond the scope of the Policy's coverage. Therefore, the Court **GRANTS** Federal's Motion for Summary Judgment. Accordingly, Snellings' Motion for Partial Summary Judgment is **DENIED**.

**SO ORDERED**.

Signed October 25th, 2005.

s/ ED KINKEADE
ED KINKEADE
UNITED STATES DISTRICT JUDGE